APPLE CHEVROLET, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. FAIR LAWN BOROUGH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND THE BOARD OF ADJUSTMENT OF THE BOROUGH OF FAIR LAWN, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 26, 1988—Decided February 27, 1989.

Before Judges KING, BRODY and SKILLMAN.

*Margolis Chase,* attorney for appellant (*Mark C. Perlberg,* on the brief).

*Harold Hoffman,* attorney for respondents.

The opinion of the court was delivered by

KING, P.J.A.D.

This case involves the enforcement of an ordinance prohibiting carriers of new motor vehicles to load and unload in a public street during deliveries to a car dealer. This is an appeal from a judgment adverse to the car dealer who sought a variance from the ordinance. Appellant, Apple Chevrolet, Inc. (Apple), the car dealer, contends that the Law Division judge erred in (1) not reversing the Zoning Board's denial of a variance application, (2) disregarding the contention that enforcement of the loading and unloading ordinance improperly impinged on a permitted land use, (3) rejecting the argument of facial unconstitutionality, and (4) rejecting the argument that the ordinance was enforced selectively and unconstitutionally.

This is the dispute's factual background: The plaintiff Apple sells new and used automobiles at 29-00 Broadway, Fair Lawn Borough. Apple has conducted business there since 1981. That location has been an automobile dealership since 1972, operated either by Apple or its predecessors.

On March 26, 1986 Fair Lawn Borough issued a summons to Apple charging it with unloading vehicles on a public street in violation of a Borough Ordinance § 26-8.1d passed in 1966, which provided:

Loading and Unloading of Motor Vehicles. Motor vehicles carriers shall be loaded and unloaded only on the premises of a new car dealer and then only between the hours of 8:00 a.m. and 9:00 p.m. Monday through Friday. It shall be a separate requirement that sufficient space be set aside for this activity so as not to encroach on the requirements of off-street parking. In no event shall motor vehicle carriers be loaded or unloaded in any public street.

This ordinance was printed and codified as part of the Borough's Zoning Ordinance.

This was the first such summons issued to Apple. Apple pled not guilty. The Fair Lawn Municipal Court judge deferred deciding the case. The judge recommended that Apple apply to the Fair Lawn Borough Board of Adjustment (Board) for a variance from the ordinance.

Apple then applied to the Board for a variance claiming an invalid exercise of the police power. In the application Apple stated that

During the entire time period in which the location at issue has been used as an automobile dealership, the delivery of vehicles ... has been accomplished off-site, in the two public streets immediately adjacent to the business premises. These deliveries have not presented a danger or inconvenience to the public for several reasons. First, the vehicle deliveries, which generally do not occur more than once a day, take only fifteen to twenty minutes to complete. Second, the streets on which the deliveries are made (29th and 30th Streets) are low traffic areas and, with the exception of one house, do not contain any residence. [Apple] ... has not taken (and does not intend to take) deliveries on Broadway, which is also adjacent to the business premises. Finally, the vehicle deliveries do not interfere with the flow of traffic....

....

*This matter presents a situation in which the Borough's exercise of its police powers directly interferes with a zoned use of the business premises.* Pursuant to *N.J.S.A.* 40:55D–70(c) the benefits of the deviation ... [Apple] ... requested far outweigh any detriment. Moreover, strict enforcement of the Ordinance would create a substantial hardship for ... [Apple]. Moreover, as a result of ... [Apple's] prior, non-conforming use, the Borough should be estopped from suddenly enforcing the Ordinance.

Strict enforcement of the Ordinance at issue would force ... [Apple] ... out of business. It is impossible for ... [Apple] to accept on-site delivery of vehicles without creating a tremendous hazard for the customers and employees who regularly visit (or work at) ... [the] premises.

In light of the past history of the location (which has *always* received off-site deliveries) and [Apple's] ... inability ... to accept on-site deliveries, ... [Apple] asks the Board to permit it to continue business in Fair Lawn by receiving relief from the strict enforcement of the Ordinance. [Emphasis supplied.]

The Board held hearings on January 5, 1987 and February 2, 1987 on the matter.

At the conclusion of the February 2, 1987 meeting the Board passed a resolution denying the requested variance. In the resolution, the Board found that Apple

suffers no hardship related to the land, that the detriment from the deviation substantially outweighs any benefit and that no special reason exists for the granting of the ... application; and

. . . .

... a local elementary school with children in kindergarten through sixth grade is located immediately across Broadway and 30th Street from ... [Apple's] property, that children attending said elementary school traverse 29th Street and 30th Street adjacent to ... [Apple's] property up to four times per day going to and coming from said elementary school, that granting the ... variance would subject the elementary school children to possible accidental personal injury or death, that as a result the ... application ... cannot be granted without substantial detriment to the public good, and ... the ... variance ... would substantially impair the intent and the purpose of the zone plan and the zoning ordinance.

Apple then filed a complaint in lieu of prerogative writ in the Law Division seeking to reverse the Board's decision. Following a hearing, the Law Division judge rendered an opinion affirming the Board's decision.

We conclude that this is simply not a matter to be considered by the Zoning Board under the sections of the "Municipal Land Use Law," *N.J.S.A.* 40:55D-1 to -112, relating to land use variances, *N.J.S.A.* 40:55D-70(c) and (d). The ordinance in question involves a prohibition against a new car dealer loading and unloading vehicles "in any public street." Under the ordinance the loading and unloading may take place "only on the premises of a new car dealer" between 8 a.m. and 9 p.m.

The appellant Apple in effect sought an adjudication that Fairlawn's Borough Ordinance § 26-8.1d amounted to an improper exercise of the police power, with no rational basis or justification, and was discriminatory, facially unconstitutional, or unconstitutional as administered because selectively enforced. *N.J.S.A.* 40:55D-70 specifically defines the powers of a

zoning board of adjustment. In pertinent part, as to variances, the statute states:

> c. (1) Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act [concerning zoning, 40:55D–62 to –68] would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship; (2) where in an application or appeal relating to a specific piece of property the purposes of this act would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, grant a variance to allow departure from regulations pursuant to article 8 of this act; provided, however, that no variance from those departures enumerated in subsection d. of this section shall be granted under this subsection; and provided further that the proposed development does not require approval by the planning board of a subdivision, site plan or conditional use, in conjunction with which the planning board has power to review a request for a variance pursuant to subsection 47a. of this act [40:55D–60]; and

> d. In particular cases and for special reasons, grant a variance to allow departure from regulations pursuant to article 8 of this act to permit: (1) a use or principal structure in a district restricted against such use or principal structure, (2) an expansion of a nonconforming use, (3) deviation from a specification or standard pursuant to section 54 of P.L.1975, c. 291 (C. 40:55D–67) pertaining solely to a conditional use, (4) an increase in the permitted floor area ratio as defined in section 3.1 of P.L.1975, c. 291 (C 40:55D–4), (5) an increase in the permitted density as defined in section 3.1 of P.L.1975, c. 291 (C. 40:55D–4), except as applied to the required lot area for a lot or lots for detached one or two dwelling unit buildings, which lot or lots are either an isolated undersized lot or lots resulting from a minor subdivision....

Subsection (c) provides for the grant of a "hardship" variance concerning a "specific piece of property or the structures lawfully existing thereon." Subsection (d) provides for the grant of a "use" variance with respect to "a use or principal structure." Apple did not seek a variance concerning any piece of property or structure. Rather, Apple sought relief from a public safety ordinance of general application throughout the community, not from a zoning ordinance. Moreover, The Legislature has limited the basic "power to zone": the governing body "may adopt

or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon." *N.J.S.A.* 40:55D–62a. The "contents of a zoning ordinance" are limited by *N.J.S.A.* 40:55D–65 which does not permit the regulation of traffic on the public streets. The closest the statute appears to come to the situation before us is to permit establishment of provisions for "off-street parking and loading" on the subject premises. *N.J.S.A.* 40:55D–65(d).

■ In *Auciello v. Stauffer*, 58 *N.J.Super.* 522, 527 (App. Div.1959), Judge Conford said: "The board of adjustment is a statutory, *quasi*-judicial body whose powers and jurisdiction are specified and strictly delimited by *N.J.S.A.* 40:55–39 [the predecessor of *N.J.S.A.* 40:55D–70(c) and (d)]." [Explanation added.] *See also D. Giordano Sons v. Ciliberti*, 22 *N.J.Super.* 179, 186 (Law Div.1952). Judge Goldmann said the "power of a board of adjustment acting under *R.S.* 40:55–39(c), as amended, stems directly from the statute, and may not in anyway be circumscribed by the municipal governing body." *Tzeses v. Bd. of Trustees of Village of South Orange*, 22 *N.J.Super.* 45, 54 (App.Div.1952), certif. den. 11 *N.J.* 327 (1953). Chief Justice Vanderbilt noted in *Duffcon Concrete Products v. Borough of Cresskill*, 1 *N.J.* 509, 515–516 (1949), that the powers of a board of adjustment "stem directly from the statute (*R.S.* 40:55–39), and may not in any way be circumscribed, altered or extended by the municipal governing body."

■ We conclude that the borough passed the questioned ordinance pursuant to its police power, *N.J.S.A.* 40:48–1, not its zoning power. Apple could not challenge that ordinance's legality, as written or enforced, by a variance application under *N.J.S.A.* 40:55D–70. Apple should have challenged the ordinance's legality conventionally, by an action in lieu of prerogative writ, *R.* 4:69–1, or in defense of the Borough's prosecution for violating the ordinance. *R.* 3:10–2; *R.* 7:4–2(e). "The right to conduct a lawful business, however, is commonly held subject to reasonable police-power ordinances. Ordinarily, such

powers extend to regulation of the use of the streets [citations omitted]...." *Schaad v. Ocean Grove Camp Meeting Association,* 72 *N.J.* 237, 246 (1977), citing *Pivnick v. Newark,* 14 *N.J. Super.* 134, 137–138 (Law Div.1951).[1] *See e.g., N.J.S.A.* 39:4–197(3)(b) (enables municipality to regulate by ordinance, resolution or regulation by "designating curb loading zones"); *Hudson Circle Servicecenter, Inc. v. Kearny,* 70 *N.J.* 289, 297–300 (1976) (discusses general police power to regulate parking under *N.J.S.A.* 40:48–1). *See also* 7 *McQuillan, Municipal Corporations* (3d ed.1981), § 24.640 at 698.

On the narrow ground that the Zoning Board did not have jurisdiction to entertain Apple's application for relief from the ordinance, we affirm the judgment of the Law Division. We express no view on Apple's substantive contention that the ordinance is invalid, a contention Apple may pursue in a future proceeding in an appropriate forum.

AFFIRMED.

---

[1] *Schaad* was overruled by *State v. Celmer,* 80 *N.J.* 405, 418, *cert. den.* 444 *U.S.* 951, 100 S.Ct. 424, 62 L.Ed.2d 321 (1979), because the Camp Meeting Association's exercise of delegated governmental power violated the Establishment Clauses of the Federal and State Constitutions. This does not effect the *Schaad* opinion's quoted expression on the police powers of municipalities in general.